IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAFAEL VILLEGAS-MARTINEZ, | ) | |
| | ) | Civil Action No. 19 – 189J |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Lisa Pupo Lenihan |
| | ) | |
| WARDEN MOSER, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**[1]

Petitioner Rafael Villegas-Martinez ("Petitioner") is a federal prisoner[2] currently confined at the Federal Correctional Institution ("FCI") Loretto. On July 5, 2018, Petitioner was issued Incident Report 3142410, which charged him with "Conduct Disruptive To Security Or Orderly Running Of A BOP Facility (High Severity) Most Like Engaging In Sexual Act," Prohibited Act Code 299[3] ML 205[4]. On or about November 7, 2019, Petitioner initiated the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to jurisdiction by a United States Magistrate Judge, including entry of a final judgment. (ECF Nos. 6, 7.)

[2] Petitioner is currently serving a 276-month prison sentence for Conspiracy to Participate in a Racketeering Enterprise in violation of 18 U.S.C. § 1962(d). See United States v. Villegas Martinez, No. 8:09-cr-00471, ECF No. 292 (D. Md.). Petitioner is also serving a 57-month prison sentence for Illegal Re-entry in violation of 18 U.S.C. § 1326(a)-(b). See United States v. Villegas-Martinez, No. 1:08-cr-00068, ECF No. 40 (E.D. Va.).

[3] Code 299 prohibits "[c]onduct which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons most like another High severity prohibited act" and "is to be used only when another charge of High severity is not accurate." "The offending conduct must be charged as 'most like' one of the listed High severity prohibited acts." BOP Program Statement 5270.09, Inmate Discipline, p.46, available at http://www.bop.gov/policy/progstat/5270_009.pdf (last visited August 27, 2020).

instant federal habeas corpus proceeding pursuant to 28 U.S.C. § 2241, challenging the disciplinary hearing process that resulted in certain sanctions, including the disallowance of 27 days of Good Conduct Time, 30 days of disciplinary segregation (suspended pending 180 days of clear conduct), and two years loss of visiting privileges.  He seeks expungement of the Incident Report and restoration of his Good Conduct Time.  Because the Court finds that Petitioner was afforded the full panoply of procedural protections to which he was entitled, his Petition for Writ of Habeas Corpus (ECF No. 2) will be denied.

A.  **Disciplinary Hearing Proceedings**

The Incident Report reflects the following Description of Incident that led to the charge of "Conduct Disruptive To Security Or Orderly Running Of A BOP Facility (High Severity) Most Like Engaging in Sexual Act," Prohibited Act Code 299 ML 205.

> On Wednesday, July 4, 2018 at approximately 2:15 PM I observed inmate Villegas-Martinez, Rafael #72497-083 and his female visitor embraced in order to say good-bye at the conclusion of Visiting.  At this time I observed them both embraced longer than an authorized amount of time and contact.  During this I observed the bottom part and the back of the female visitors dress moving.  I then walked over to where inmate Villegas-Martinez and his female visitor were seated at which time her dress stopped moving.  A review of VR Camera 40 time stamped at 2:06:29 (see attached) shows inmate Villegas-Martinez place his left hand up the front of his female visitors dress.  At 2:06:53 inmate Villegas-Martinez removes his left hand out from under his female visitors dress as I was walking to the area where they were seated.

Resp't Exh. 1C; ECF No. 10-4, p.2.  The Reporting Employee, R. Forlina, issued the Incident Report at 9:25 a.m. on July 5, 2018, and the Incident Report was delivered to Petitioner by J. Robinson at 2:00 p.m. that same day.  Id.

---

[4] Code 205 prohibits "[e]ngaging in sexual acts."  BOP Program Statement 5270.09, Inmate Discipline, p.44, available at http://www.bop.gov/policy/progstat/5270_009.pdf (last visited August 18, 2020).

An investigation into the incident took place during which Petitioner was advised of his right to remain silent. Id., p.3. Petitioner stated that he understood his rights and was afforded an opportunity to make a statement if he so desired. In response, Petitioner stated that the "only thing he did was hug her." Petitioner did not request any witnesses. At the conclusion of the investigation, on July 5, 2018, the investigator determined that Petitioner was properly charged and referred the matter to the United Discipline Committee ("UDC") for an initial hearing. Id.

At 9:40 a.m., on July 10, 2018, Petitioner appeared before the UDC. Id., p.2. Petitioner did not make any comments and the UDC determined that it would refer the charge to the Disciplinary Hearing Officer ("DHO") for further hearing due to the seriousness of the offense. Id. Additionally, on that same day, Petitioner was provided with the "Notice of Discipline Hearing Before the DHO" and "Inmate Rights at Discipline Hearing" forms, both of which he signed and both of which are dated July 10, 2018. Resp't Exh. 1D; ECF No. 10-5, pp.6-7. Petitioner noted on the "Notice of Discipline Hearing" form that he did not wish to have a staff member represent him at the hearing and that he also did not wish to have any witnesses provide testimony on his behalf at his hearing. Id., p.7.

Petitioner's DHO hearing was held at 9:28 a.m., on July 17, 2018. Id., p.2. As recorded on the DHO Report, Petitioner denied the charge and made the following statement: "That is not true; I did not put my hand up her dress. He is lying about me doing that, I did not engage in any sex act with her. No, I do not have any evidence or witnesses prove he is lying, or that the CCTV footage is not accurate." Id. In addition to the Incident Report and the Investigation, the DHO considered CCTV video footage depicting the interaction between Petitioner and his female visitor in the FCI Loretto visiting room on July 4, 2018. The DHO noted on his Report that video footage showed Petitioner and his female visitor engaging in a sexual act.

3

> Specifically, upon review of the CCTV footage by the DHO, at 2:06:29 time stamp of the Video, inmate Villegas-Martinez, Rafael Register No.: 72497-083 can be observed placing his hand up the front of his female visitors dress as they were standing and embracing, and at 2:06:53 the video shows inmate Villegas-Martinez remove his hand from up under the dress.

Id., p.3. The DHO also considered a supporting memorandum authored and submitted by the Reporting Employee, R. Forlina, which was dated July 8, 2018. Id. The memorandum indicated that Forlina conducted a review of Petitioner's Turlincs email account, and he observed emails sent by Petitioner to his female visitor after their visit that describe, in graphic detail, the sexual acts the two engaged in that afternoon. Resp't Exh. 1C; ECF No. 10-4, pp.4-8. The DHO noted one such email in his Report that was sent by Petitioner at 4:34 p.m. on July 4, 2018, wherein Petitioner wrote "that you got to enjoy having my fingers go in there today the way they did." Resp't Exh. 1D; ECF No. 10-5, p.3.

After considering the evidence, the DHO concluded that, based on the greater weight of the evidence, Petitioner committed the prohibited act as charged. Id., pp.3-4. The DHO sanctioned Petitioner to 27 days disallowance of Good Conduct Time, 30 days of disciplinary segregation (suspended pending 180 days clear conduct), and loss of visiting privileges for two years. Id., p.5. The DHO issued his Report on October 3, 2018. Id. Petitioner then exhausted his administrative remedies by unsuccessfully appealing the DHO's decision at the regional and national levels. Resp't Exh. 1B; ECF No. 10-3.

**B.  Discussion**

In his Petition for Writ of Habeas Corpus, Petitioner challenges the disciplinary process on procedural due process grounds asserting (1) that in violation of Program Statement (PS) 5270.09 and 28 C.F.R. § 541.7(h), he did not receive a copy of the UDC's decision until the time he received the DHO's Report; (2) that one of his issues was not addressed on appeal, (3) that in

violation of PS 5270.09, the Reporting Employee conducted his own investigation and submitted evidence to the DHO, and (4) that the DHO relied on evidence that was not disclosed to him.[5] ECF No. 2.  Respondent filed an Answer to the Petition on February 3, 2020.  ECF No. 10.  This matter has been fully briefed by the parties and is now ripe for disposition.

### 1. Procedural Standards Governing Prison Disciplinary Proceedings

It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  The United States Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to:  (1) appear before an impartial decision-making body; (2) advance written notice of the disciplinary charges no less than 24 hours before the disciplinary hearing; (3) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; (4) assistance from an inmate representative, or substitute aid from staff, if the charged inmate is illiterate or if complex issues are involved; and (5) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.  Id. at 564, 566, 570-71.

In the federal prison system, the Bureau of Prisons ("BOP") has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §§ 541.1-541.8.[6]  These guidelines are specifically tailored and designed to meet or exceed the due

---

[5] It is not clear from the Petition what evidence Petitioner claims was not disclosed to him, but it appears to be a still shot from the CCTV video footage that was referenced in the Incident Report by the Reporting Employee.

[6] The regulations governing the BOP's inmate discipline program are also found at Program Statement 5270.09.

process requirements outlined by the Supreme Court in Wolff, *supra*.  *See* Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).  Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation.[7]  28 C.F.R. § 541.5(a)-(b).  After investigation, the incident report is referred to a UDC, consisting of staff designated by the Warden, for an initial hearing.[8]  28 C.F.R. § 541.7(b).  The inmate, in turn, is entitled to appear before the UDC during its review of the incident report, except during UDC deliberations or when the inmate's presence would jeopardize institution security, and the inmate is entitled to make a statement and present documentary evidence.  28 C.F.R. § 541.7(d)-(e).  The UDC may either reach a finding regarding whether a prohibited act was committed or refer the case to the DHO for further hearing.[9]  28 C.F.R. § 541.7(f)-(g).  The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act.  28 C.F.R. § 541.8(a).  The DHO hearing is conducted pursuant to the procedures set forth at 28 C.F.R. § 541.8.

Throughout this hearing process, the inmate is provided with a series of procedural rights. For example, the inmate is entitled to notice of the alleged infraction.  Specifically, the Warden

---

[7] The inmate "will ordinarily receive the incident report within 24 hours of staff becoming aware of [the inmate's] involvement in the incident."  28 C.F.R. § 541.5(a).

[8] "The UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays.  UDC review of the incident report may also be suspended if it is being investigated for possible criminal prosecution."  28 C.F.R. § 541.7(c).

[9] If the UDC finds that a prisoner has committed a prohibited act, then it may impose minor sanctions.  28 C.F.R. § 541.7(f).  However, if the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing.  28 C.F.R. § 541.7(a)(3)-(4).

must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.8(c). The inmate is also entitled to assistance at DHO hearings, if so desired. In particular, if requested, the Warden must provide the inmate with a staff member to represent him at the DHO hearing. 28 C.F.R. § 541.8(d).

The inmate also has a series of procedural rights at the hearing itself. The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. § 541.8(e). The inmate is entitled to make a statement and present documentary evidence. 28 C.F.R. § 541.8(f). The inmate also has the right to submit names of requested witnesses and have them called to testify. 28 C.F.R. § 541.8(f). While the DHO need not call repetitive witnesses or adverse witnesses, the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available. 28 C.F.R. § 541.8(f)(2)-(3).

In addition, the regulations prescribe procedural standards for DHO decision-making. The regulations require that the DHO must consider all evidence presented at the hearing. 28 C.F.R. § 541.8(f). The decision of the DHO must be based on "at least some facts", and if there is conflicting evidence, it must be based on the "greater weight of the evidence." 28 C.F.R. § 541.8(f). Finally, the DHO must prepare a record of the proceedings. 28 C.F.R. § 541.8(h). This record must be sufficient to document the advisement of inmate rights, the DHO's decision and the specific evidence relied upon by the DHO. 28 C.F.R. § 541.8(h)(1)-(3). The record must also include the sanction imposed and a rationale for the imposed sanction. 28 C.F.R. § 541.8(h)(4)-(5). A copy of this record must be delivered to the inmate. 28 C.F.R. § 541.8(h).

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations, they fully

satisfy the requirements of procedural due process in this prison disciplinary setting. *See*, *e.g.*, Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009) (upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007) (same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006) (same). However, noncompliance with the regulations do not necessarily amount to a due process violation as "[p]rison regulations are designed to ensure the safe and secure administration of prisons, not to confer rights, and they create liberty interests only when they protect inmates from 'atypical or significant hardship . . . in relation to the ordinary incidents of prison life.'" Mendoza v. Tamez, 451 F. App'x 715, 717-18 (10th Cir. 2011) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)) (noting that prisoner had liberty interest in his good time credits but did not have a comparable interest in the proper enforcement of prison regulations); Barner v. Williamson, 233 F. App'x 197, 199 n.5 (3d Cir. 2007) ("Moreover, while Barnes would have a liberty interest in the good time credits, Barnes has not shown that the regulation [i.e., 28 C.F.R. § 541.15(a)] specifying the time at which a person must be notified of the charge either itself creates a liberty or property interest, or that its violation necessarily abridges the constitutional protections established in Wolff."); Aponte v. Bureau of Prisons, No. 10-140, 2012 WL 1865501, at *4 (W.D. Pa. May 22, 2012) (rejecting a prisoner's attempts to "constitutionalize the procedural provisions of the CFR regarding prison disciplinary proceedings," wherein the prisoner "equat[ed] those procedures required by the CFR with the procedures required by the United States Constitution"); *see also* Reeb v. Thomas, 636 F.3d 1224 (9th Cir. 2011) ("A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law.").

Judged against these standards, Petitioner's procedural challenges to his prison disciplinary proceedings, two of which are alleged violations of the regulations governing prison disciplinary procedures, simply fail.  In this case, the record reflects that Petitioner was afforded all the procedural protections required by <u>Wolff</u>.  Specifically, Petitioner was given a copy of the Incident Report, which provided him with notice of the charge against him, on July 5, 2018.  This was well in advance of his disciplinary hearing before the UDC on July 10, 2018 and the DHO on July 17, 2018, as called for in <u>Wolff</u>.  Also in accordance with <u>Wolff</u>, Petitioner was offered, but declined, assistance from a representative and the opportunity to call witnesses and present documentary evidence on his behalf.  He was present throughout and participated in the hearing, which was before an impartial decision making body, and he ultimately received a copy of the DHO's Report, which included a statement that outlined the reasons why he found Petitioner committed the prohibited act, as well as the reasons why the sanctions were imposed.  Given that Petitioner was afforded the minimum procedural protections set forth in <u>Wolff</u>, the Court finds that the DHO fully satisfied the requirements of due process in this case.[10]

---

[10] Furthermore, even assuming, as Petitioner asserts in his Petition, that BOP officials violated PS 5270.09 and the Code of Federal Regulations by failing to provide him with a written copy of the UDC's decision and disposition by the close of business the next work day, that one of his issues was not addressed on appeal, and that he was not provided with the still shot of the CCTV video footage that was referenced in the Incident Report, he has not demonstrated how any of these failures prejudiced him.  *See*, *e.g.*, <u>Cook v. Warden, Fort Dix Correctional Institution</u>, 241 F. App'x 828, 829 (3d Cir. 2007).  As to his claim that the Reporting Employee violated PS 5270.09 by conducting an investigation into the incident when he was prohibited from doing so, the Court finds that no such violation occurred.  PS 5270.09 provides only that the Investigating Officer may not be the same employee who reported the incident.  The Investigating Officer and the Reporting Employee were not the same person in this case, and nothing in PS 5270.09 prohibits the Reporting Employee from submitting additional information or evidence that supports an inmate's involvement in a charged prohibited act.  Therefore, notwithstanding the fact that Petitioner was afforded all the process that was due to him under the <u>Wolff</u> standard, and that neither the BOP's PS 5270.09 or the regulations governing prison disciplinary proceedings of which Petitioner claims were violated create any protectable interests entitling

## 2. **Substantive Standards Governing DHO Decisions**

Although Petitioner does not amount a substantive attack on the sufficiency of the evidence to support the DHO's conclusion that Petitioner committed the prohibited act as charged, the Court finds that there was "some evidence" to support the finding of the DHO. In this regard, a prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 455 (1985). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. Therefore, it is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48, 51 (3d Cir. 1992); Thompson, 889 F.2d at 501. Applying this deferential standard, once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Griffin v. Spratt, 969 F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d at 501; Freeman v. Rideout, 808 F.2d 949, 954 (2d Cir. 1986). Only if there is no evidence "from which the conclusion of the administrative tribunal could be deduced" may its decision be disturbed. Hill, 472 U.S. at 455.

---

Petitioner to due process or abridge the constitutional protections established in Wolff, Petitioner's claims are without merit.

Here, there was "some evidence" to support the DHO's finding that Petitioner committed the prohibited act. Specifically, the record reflects that the DHO considered the Incident Report, which describes what the Reporting Employee saw occur in the visiting room between Petitioner and his female visitor, and a memorandum describing the review of emails between Petitioner and his visitor regarding their sexual conduct that day. Additionally, the DHO personally viewed the CCTV video footage of the incident and concluded Petitioner was engaging in a sexual act. Thus, the DHO reasonably concluded that Petitioner committed the prohibited act and his decision comports with the minimum requirements of procedural due process standards.

### 3. Sanctions

Petitioner also does not appear to challenge the sanctions imposed by the DHO, but, to the extent that he does, the Court finds that they were within the range of sanctions available to the DHO.

Pursuant to 28 C.F.R. § 523.20(c), the BOP will award inmates serving a sentence for an offense committed on or after April 26, 1996, either: (1) 54 days credit for each year served, if the inmate has earned or is making satisfactory progress toward earning a GED credential or high school diploma; or (2) 42 days credit for each year served, if the inmate has not earned or is not making satisfactory progress toward earning a GED credential or high school diploma. That time, however, is subject to disciplinary disallowance. 28 C.F.R. § 523.20(e).

Inmates who commit a High Severity Level prohibited act,[11] like Code 205, face a variety of possible sanctions. Specifically with regard to good conduct time, these sanctions include: (1)

---

[11] Prohibited acts are categorized according to the severity of the conduct. Code level 100 offenses are deemed "Greatest Severity Level," code level 200 offenses are "High Severity Level," code level 300 offenses are "Moderate Severity Level," and code level 400 offenses are

forfeiture and/or withholding of earned statutory good conduct time or non-vested good conduct time up to 50% or up to 60 days, whichever is less; (2) termination or disallowance of extra good time; and (3) disallowance of between 25% and 50% (14-27 days) of good conduct time credit available for a year.  Sanctions unrelated to good conduct time include, but are not limited to: (1) disciplinary segregation (up to 6 months) and (2) loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).  See 28 C.F.R. § 541.3, Table 1 – Prohibited Acts and Available Sanctions.

Here, the DHO imposed a disallowance of 27 days of good conduct time, as well as a suspended term of 30 days disciplinary segregation and loss of visiting privileges for two years. These sanctions were well within the parameters available to the DHO.[12]

A separate Order will follow.

Dated:  August 31, 2020.

_____
Lisa Pupo Lenihan
United States Magistrate Judge


Cc:   Rafael Villegas-Martinez
      72497-083
      FCI Loretto
      P.O. Box 1000
      Cresson, PA  16630

---

"Low Severity Level."  The scope and severity of available sanctions increase as the severity level increases.  See 28 C.F.R. § 541.3, Tables 1-2.

[12] Even though petitioners cannot challenge a loss of privileges sanction in a habeas petition, see Castillo v. FBOP FCI Fort Dix, 221 F. App'x 172, 175 (3d Cir. 2007), the Third Circuit has found that an inmate's sanction to a total of two years loss of telephone and visiting privileges does not amount to "excessive punishment under the Eighth Amendment, or to the kind of 'extreme deprivation' of prison conditions prohibited under the Eighth Amendment." Id. at 176 (internal citations omitted).

Counsel of record
(Via CM/ECF electronic mail)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAFAEL VILLEGAS-MARTINEZ, ) | |
| ) | Civil Action No. 19 – 189J |
| Petitioner, ) | |
| ) | |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| WARDEN MOSER, ) | |
| ) | |
| Respondent. ) | |

**ORDER**

**AND NOW**, this 31st day of August, 2020, for the reasons set forth in the accompanying Memorandum Opinion,

**IT IS HEREBY ORDERED** that the Petition for Writ of Habeas Corpus (ECF No. 2) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk of Court mark this case **CLOSED**.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1)(B) of the Federal Rules of Appellate Procedure, Petitioner has sixty (60) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

Lisa Pupo Lenihan
United States Magistrate Judge

Cc:   Rafael Villegas-Martinez
      72497-083
      FCI Loretto

P.O. Box 1000
Cresson, PA  16630

Counsel of record
(Via CM/ECF electronic mail)